Mr. Brody, before I start the clock, let me just give you a heads up that you've reserved four, I'm correct? Yes, your honor. Okay, at 11 minutes the tone will sound and I'll just interrupt you a little bit to remind you you're into your rebuttal time. You can keep going or not as you please, but you'll be eating up your rebuttal. If you're answering an aggressive question and you have to keep going on it, I won't take that away from you. Thank you, your honor. Go ahead, thanks. This is Ted Brody for Appellants, may it please the court. Your honor, I'll begin with the issue of first impression, which is the standard for single enterprise liability for Walker process fraud. There's not a lot of case law in this, but the 10th circuit and Lennox gave us the standard when the parent controls, dictates, or encourages the subsidiary's anti-competitive conduct, the parent engages in sufficient independent conduct to be held directly liable as a single enterprise with the subsidiary under the Sherman Act. Where the district court error was trying to impose on top of that an additional involvement or knowledge requirement that's just not there, and it conflicts with the reasoning of the 10th circuit and the U.S. Supreme Court in the Copperwell decision. Judge Hughes, before you get to your merits issues, can you tell me why under our precedent and Zitronix that this shouldn't be transferred to the 5th circuit? Yes, your honor, for three reasons. First, under Zitronix, it was a standalone Walker process fraud case. The court corresponding transferred it to the 5th circuit and the 5th circuit transferred it back, and then you kept it, and it was your honor that was on that panel. Yes, I am asking you the question. Our original Zitronix decision is precedential and binding. When we got it back, we did not agree with the 5th circuit that jurisdiction was proper. We held under Christensen that it was plausible and didn't retransfer, but isn't that initial Zitronix decision precedential here? Well, the cases are all four in terms of being plausible, but in addition to that, there's also a sham litigation, patent litigation claim. Surely sham patent litigation is a substantial issue of patent law, and further, actually there's four reasons. The infringement claim on the 993 patent, appellees have admitted in their case that there's still an infringement claim against appellants on the 993 patent pending in the district court. That's jurisdiction right there, and in addition to that- How can there be a pending infringement claim based upon an invalid patent? Because they never dismissed it despite multiple requests. It's there. Well, it's not, but it can't be pursued. There's no valid patent anymore, so it can't be pursued. The only live claims in this case are your walker process claims, aren't they? I don't understand- And sham litigation. All right, well, there are also other patents involved. The energy heating case recognized there was a continuation patent, and the game being played is they're taking all the inequitable conduct pleadings, dumping them into an IDS, sending them to the patent office, switching up the claims a little bit on a continuation, and getting the patent office to issue it because the patent office has no mechanism to deal with inequitable conduct, which is an issue of equity before court, and now they've done it three more times. So now there's four continuation patents on this same 993 patent that was fraudulently obtained, and they paid the issue fees for all of these. So that is a very- Are those continuation patents part of this case? They are not part of the case, but they have been- I don't see how they're relevant here. I do want to ask you, because you suggested a couple of times that there's something different from the walker process, which is a sham- what do you call it? Sham patent litigation? Sham patent litigation is a broader- it is a broader doctrine, yes. And what is that doctrine based upon? What statutory basis is that doctrine? Well, it would certainly be under the patent statute. If you improperly bring a patent claim, that is a substantial issue of patent law that the- No, no, no, no. Tell me what the source of that cause of action is. We know that walker process is based upon antitrust law. Is sham patent litigation also a variant of antitrust law, or is it a form of somehow patent infringement litigation? I would argue it can be both, Your Honor, including in the inherent authority of this court to police its own- or to police the patent world. I don't understand that at all. Can you help me? This is Judge Chen. Does this sham patent litigation claim that you say that you have, that you also say is separate from your patent litigation claim arise under the Patent Act, or does it arise under the Sherman Act, or does it arise under some other act? What's the answer to that question? The case law is that it arises under the Sherman Act, but I would also argue in the Zeitronic line of cases, it raises substantial issues of patent law that the federal circuit should address. Okay. It's a Sherman Act claim that you think there's some important substantial patent law issue inside of that Sherman Act claim. Exactly, Your Honor. Just as you would argue the same thing for what you say is a separate claim, your so-called walker process claim. Is that right? Exactly, Your Honor. Okay. So why doesn't your so-called separate sham patent litigation claim suffer from the problems as the walker process claim, which under our precedent that we're bound by in Zeitronics, we've already held we don't have jurisdiction to handle under these circumstances. But didn't the court also suspend the mandate in that? You did keep it. We kept it because the Fifth Circuit re-transferred, and under Christianson, in order to avoid a ping pong back and forth, a court can ultimately decide that even though it doesn't think it has jurisdiction, if there's a plausible case to be made, it won't re-transfer. That doesn't mean we agreed with the Fifth Circuit, and it doesn't mean we can ignore our binding precedent in Zeitronics. So we very may well end up with the same kind of situation here where we send it to the Fifth Circuit, and then they send it back, and we have to decide whether it's plausible or not. But this case seems even less plausible than Zeitronics because the patent here has already been declared invalid for inequitable conduct. So I don't see any possible patent issue in this case. In fact, all the issues you have on appeal have nothing to do with patent law. They're all to do with like antitrust and statute of limitations and standing, which have no unique patent law claim. So again, what patent law issues would we have to decide in this case? The patent law issues include how in a Walker process fraud context, the patent is enforced and what knowledge is required by the party pulling the strings for that party to be liable for enforcing that which does raise important issues under the patent statute. What are those issues? It sounds to me like we already know that these people are trying to engage in inequitable conduct and therefore got their patent declared invalid. So we know that the patent is invalid and that they engage in equitable conduct, which goes to intent. What other patent law issues? It sounds to me like you're reciting typical antitrust elements, not patent elements. Well, there are also elements that involve what is knowledge of what are facts related to experimental use and the experimental use defense. Have those not already been decided by our prior cases, a case saying these patents invalid due to inequitable conduct? Well, see, a big issue in this case, Your Honor, is when is it proper to hold the Chandler's, the appellants, to knowledge of, in this case, a bogus, if you will, or a bad faith experimental use defense when the opinion of counsel was withheld, didn't even exist, wasn't disclosed until within the four-year period, the four-year statutory period, and then what those components of the experimental use defense are, and that's something appropriate for a national rule unless everybody in our situation, every time one person in one case files an inequitable conduct defense, which we've all done many times, and usually it doesn't work, then the clock's running on a Walker process brought antitrust case. That matters. And I would add, if I may, that in the Zeitronics case, the courts, the panel specifically held that even if a patent is not live, that is not a reason not to maintain jurisdiction. Well, it's not the single reason, but Zeitronics clearly held in that case that we didn't have jurisdiction because under Gunn, it didn't arise under a patent law. It arose under the Sherman Act. Okay. In the record, there is a being asserted... Is it being asserted in this case? Not yet, but if... Well, then it doesn't arise under that patent case. I mean, let me ask you this very simple question. Do you think Gunn v. Minton applies to Walker process claims at all? In the same sense that this court distinguished Gunn v. Minton, which is a patent malpractice... We didn't... Can we get clear? Let me just stop you. We did not distinguish Gunn v. Minton. We applied it. The Fifth Circuit distinguished it. And what I'm asking is, do you think Gunn v. Minton applies to Walker process claims and will place some of them in regional circuits if they have no patent issue? Or do you think that Walker process claims always arise under the patent statutes and belong in the Federal Circuit? I'm not trying to trick you. I think this is an important question and is unanswered by the Supreme Court. The electronics answered it one way. In our case, in the Fifth Circuit, I seem to think answered it the other way. What's your answer? My answer is Walker process fraud always raises substantial issues of patent law, and those cases do belong in this court. And I agree it's unclear. I agree the case law is unclear, but I think that's the better answer. But it's not the answer we gave in Zitronix, which we're bound by. There are... It still raises... It still raises a plausible substantial issue. I also see that I'm 13 minutes into my time, so I'd like to reserve from here. Go ahead. Do I just... Your Honor, do I just start? Next counsel, please. Yeah. Thank you, Your Honor. May it please the court, this is Devin Padmanabhan for Phoenix and Mark Fisher. Your Honor, this court should dismiss this appeal for lack of jurisdiction and transfer this appeal to the Fifth Circuit. And the primary reason is that this appeal does not present a case in which patent law is a necessary element of the claims. I think as Mr. Berruti admitted, Chandler's claims do not arise under the Patent Act. Counsel, this is Judge Hughes. Can I just interrupt you? I have a couple of questions here. First, isn't this just going to be a waste of time? Because it seems pretty clear from the Fifth Circuit's decision that they don't think Gunn v. Minton applies to Walker process claims at all. Is that your reading of the Fifth Circuit decision in Zitronic? Your Honor, it isn't. And there's only one part of the Fifth Circuit decision that gives me a reason to say that is they went out of their way... Because in your initial decision in Zitronic, you cite that Eleventh Circuit case, the MDS case, Your Honor, and make the point that that's a case in which the Eleventh Circuit decided to keep the case even though there was an underlying patent infringement issue. And when the Fifth Circuit looked at it, they kind of stopped on that and they went out of their way to make clear the reason they didn't think that mattered to their decision was because the patent in Zitronics was live. And so they've also kind of put themselves in a box where they've identified one where they've said, hey, if it wasn't live, I don't think we can distinguish. And probably under Christensen, they would have had to keep it. And so I think the Fifth Circuit's own opinion makes clear why this particular issue should be decided by the Fifth Circuit and not by the Federal Circuit. And that's my best answer for why. Otherwise, I think there... I wasn't trying... When we brought this issue up, we weren't trying to make it into another ping pong match. But I think the way when you took it back, as much as this court disagreed with the Fifth Circuit, at the very end where you say, hey, we really want to make it clear that this is not going to be based on whether the patent is live or dead. I think what you were saying, and I'm speaking for you, Your Honor, I appreciate you were on the case. But what you were saying was whether it's there. And in a dead one, especially in a case like ours, where all of the issues you've already decided in energy heating, you've already determined the inequitable conduct issues, and you've decided that there was inequitable conduct, there are no patent law issues left. And it goes clearly to kind of where I think you want the jurisprudence to go, which is to focus everybody in on what Gundy Minton said and what you want people to do, have you exercised jurisdiction when there is a substantive patent law issue at stake. This is a case where it's absolutely clear, because you've already decided the patent law issues, that there are no patent law issues. And it's exactly the same position where the Fifth Circuit said, you know, the only reason we're distinguishing your analysis of MDS from the Eleventh Circuit is it's a live patent, not a dead patent. Counsel, let me ask you just one more question. And I think we're bound by Zitronix on this, so we can't get around it. But putting that aside, do you think there's a way to read Gundy Minton as not applicable to 1331 at all and just, just regulating the state versus federal sphere and not the circuit to circuit sphere? Your Honor, I mean, based on the facts alone, you could, you know, there's a way to do it and argue that. But I think the more persuasive approach is looking at the language and it's something you struggled with in the opinion is how you take statutory language that's so close and try to read them differently. And I think that's the better view of this. And that's why really tying it to the statutory basis for this court's jurisdiction and reading Gundy Minton in that context is the better approach. This is Judge Chen. Can you remind me again, the basis of the findings of inequitable conduct for the underlying patent here? Yes, Your Honor. So in the underlying patent, what in the district court, there was an argument over whether the experimental use evidence over those two, that two year period was the basis for not having to disclose. The district court did two things that this court considered. One was the district court excluded the testimony of the patent lawyer whom the inventor relied upon. And the second piece was the experimental use evidence. And this said it was fine that the district court was within the district court's discretion to exclude the attorney. Let me cut to the chase since we're running out of time. The patent was ruled unenforceable for inequitable conduct because there was a finding that the inventor here knowingly procured the patent when the invention had been in public use for more than a year and the experimental use defense theory was rejected. Is that fair to summarize? That is very fair. Okay. And so now that patent is gone and yet there have been continuation patents that have issued here? Is that right? Off of the same specification? Off the same specification. But in that... How in the world are those legitimate patents? Well, so Your Honor, if you look at, there's a footnote in your opinion where you even looked one of the patents, continuation patents that were issued and pointed out that the claims in that particular patent actually implicated the experiments being used in the experimental use defense. But the claims in the 993 did not have the limitations necessary to implicate the experimental use. So the reason for that is really based on a sentence from your opinion where you apply. And so all the continuations they're doing really is following this court's direction on that line when they analyze experimental use. Your Honor, unless there's anything else, the only other case that I would point to, and I agree with you, Zaytronix is binding on this issue, is the Westlake case that we cite. Also a very similar situation, both sham litigation claims and Walker process claims, the Ninth Circuit decided it would keep it because the underlying patent there was invalid. And so there were no substantive patent law questions. And with that, Your Honor, I'm not going to address the merits because I don't think you're interested in the merits right now. Unless you have any questions for me, I can yield the rest of my time. And further, thank you, counsel. Mr. Brody, I'm going to give you your full four minutes since we've been after you. Thank you, Your Honor. I would just confirm that in Zaytronix, this court held, quote, while it is not implausible to reach this conclusion, we reject the theory that our jurisdiction turns on whether a patent can still be asserted. So that is in Zaytronix. I would also make the point that it was this court that found in energy heating that there was bad faith as well as inequitable conduct. And these are substantial issues of patent law and how they get applied in this case is going to inform Walker process jurisprudence going forward. And what happens to patent plaintiffs in these multiple LLCs, which are proliferating, is a matter of substantive patent law because what you're creating is basically a weapon for the LLC that's judgment proof at the bottom and the guys making the without consequence. And that's why you need the single enterprise theory and having many circuit differences on what is an appropriate single enterprise theory is not an appropriate, is not the best way to police patent law for those kind of situations. And I'm looking at the Westlake case cited by a post-counsel and it does reference that the plaintiffs under Christensen, the plaintiff's rights really necessarily depends on a resolution of a substantial question of federal patent law. And there are substantial questions of patent law, especially related to the fraudulent concealment and the running of the statute of limitations. And what is experimental use and what are the facts that support experimental use, among others. Anything further, counsel? No, your honor. The matter will stand submitted. Thank you.